Prepared by and Return to:
PHFA-Loan Servicing Division
211 North Front Street, P.O. Box 15057
Harrisburg, Pennsylvania 17105-5057
1-800-346-3597

Property ID Number: **344350000**

*Above space is intentionally left blank for recording data.*

---

# MODIFICATION AGREEMENT

Date: **FEBRUARY 10, 2022**
Borrower[1] ("I"): **ANGEL LIVINGSTON nka ANGEL GRANBY**
Lender ("Lender"): **U.S. Bank National Association as Trustee for the Pennsylvania Housing Finance Agency**
Date of First Lien Mortgage ("Mortgage") and Note ("Note"): **AUGUST 24, 2001**
Mortgage Recording Information: **PHILADELPHIA County, PA; SEPTEMBER 6, 2001 & Instr.# 50320549**
Property Address ("Property"): **840 KENMORE RD., PHILADELPHIA, PA 19151**
Property Legal Description: **Attached hereto as Exhibit A**

If my representations and covenants in Section 1 continue to be true in all material respects, then this Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations and Covenants.** I certify, represent to Lender, covenant and agree:

   A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

   B. At least one of the borrowers signing this Agreement lives in the Property as a principal residence, and the Property has not been condemned;

   C. There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;

   D. I have provided the required documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Modification Program ("Program"));

   E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

---

[1] If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

F. If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

G. I have made or will make all payments required under a trial period plan if required by the loss mitigation program.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

A. If, prior to the Modification Effective Date as set forth in Section 3, the Lender determines that any of my representations in Section 1 are no longer true and correct or if any covenant in Section 1 has not been performed as required, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

B. I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on **APRIL 1, 2022** (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a trial period plan, this modification will not take effect. The first modified payment will be due on **APRIL 1, 2022.**

A. The Maturity Date will be: **MARCH 1, 2052.**

B. The modified principal balance of my Note will include amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Capitalized Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be **$106,150.84** (the "New Principal Balance"). I understand that by agreeing to add the Capitalized Amounts to the outstanding principal balance, the added Capitalized Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement. I understand that the Mortgage may continue to secure unpaid amounts not included in the New Principal Balance and not waived by Lender (if any such unpaid amounts exist), which may include deferred attorney's fees, property preservation costs, NSF fees and similar charges, as applicable.

C. Interest at the rate of **3.5%** will begin to accrue on the New Principal Balance as of **APRIL 1, 2022** and the first new monthly payment on the New Principal Balance will be due on **APRIL 1, 2022.** My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On |
|---|---|---|---|---|---|
| 1-30 | 3.5% | $476.67 | $269.85, may adjust periodically | $746.52, may adjust periodically | 04/01/2022 |

*The estimated escrow payments will be adjusted periodically based on actual disbursements for escrow items in accordance with applicable law and therefore the total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

4. **Additional Agreements.** I agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this

Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B. That this Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that I previously entered into with Lender.

C. That I will comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. That I will continue making payments to Lender, including payments for principal, interest, taxes, insurance and other advances which may be made under the Note and other Loan Documents both before and after a "Survival Event" until I have paid all of the amounts I may owe. I will also continue to perform any other obligations I may have under the Mortgage or this Agreement both before and after a "Survival Event" until I have paid all of the amounts I may owe. A "Survival Event" means:
(i). Any default described in the Note;
(ii). The Lender providing notice to me it is requiring me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount;
(iii).The Lender requiring immediate payment in full of all sums secured by the Mortgage;
(iv).The Maturity Date as defined in the Note;
(v). The entry of any judgment against me under the Note; and
(vi).The entry of any judgment under the Mortgage.

E. That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my escrow account.

F. That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

G. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

H. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

I. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the entire balance of the modified mortgage Loan is in first lien position and/or is fully enforceable upon the Modification Effective Date and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

J. That I will execute such other documents as may be reasonably necessary, in Lender's discretion, to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected

      Agreement or a separate agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Program.

K. That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary in its sole discretion. All documents the Lender requests of me under this section shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

L. That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

M. That if I received a discharge through a Chapter 7 bankruptcy proceeding after execution of the Loan Documents and I have not reaffirmed my mortgage debt, then, notwithstanding anything to the contrary contained in this Agreement, Lender acknowledges the effect of a discharge in bankruptcy and may not pursue me for personal liability. However, I acknowledge that Lender retains certain rights, including but not limited to the right to foreclose its lien evidenced by the Mortgage under appropriate circumstances. The Lender and I agree that the consideration for this Agreement is Lender's forbearance from presently exercising its rights and pursuing its remedies under the Mortgage as a result of my default. Nothing in this Agreement shall be construed to be an attempt to collect against me personally or an attempt to revive personal liability.

*[remainder intentionally blank; signatures follow]*

In Witness Whereof, the Lender and I have executed this Agreement.

BORROWER:

_____
ANGEL LIVINGSTON

_____
ANGEL GRANBY

COMMONWEALTH OF PENNSYLVANIA     : SS. TWM
COUNTY OF ~~Pennsylvania~~ Philadelphia

This record was acknowledged before me on the 9 day of March, 2022,

by ANGEL LIVINGSTON nka ANGEL GRANBY.

_____
Signature of Notarial Officer

> Commonwealth of Pennsylvania - Notary Seal
> THERESA W. McLEOD, Notary Public
> Philadelphia County
> My Commission Expires February 25, 2023
> Commission Number 1288543

**LENDER:**

U.S. BANK NATIONAL ASSOCIATION
as Trustee for the Pennsylvania Housing Finance Agency

By:
Pennsylvania Housing Finance Agency,
    Attorney-in-Fact pursuant to a Limited Power of
    Attorney dated October 4, 2006 and recorded by the
    Recorder of Deeds of Philadelphia County on
    October 16, 2006 as Instrument #51551499

By: _____
Kathryn Newton
Director of Loan Servicing

COMMONWEALTH OF PENNSYLVANIA    :
                                               : SS
COUNTY OF DAUPHIN                  :

This record was acknowledged before me on the 22nd day of March, 2022, by Kathryn Newton, Director of Loan Servicing, who represents that she is authorized to act on behalf of Pennsylvania Housing Finance Agency, the attorney-in-fact of U.S. Bank National Association as Trustee for the Pennsylvania Housing Finance Agency.

_____
Signature of Notarial Officer

Commonwealth of Pennsylvania - Notary Seal
Kimberley A. Ayala, Notary Public
Dauphin County
My commission expires January 15, 2023
Commission number 1196147
Member, Pennsylvania Association of Notaries

**CERTIFICATE OF RESIDENCE**

I hereby certify that the principal office and complete post office address of the Lender herein is:

PHFA-Loan Servicing Division
211 North Front Street, P.O. Box 15057
Harrisburg, PA 17105-5057

_____
Authorized Agent

Angel Granby
FHA-USDA-Generic ver. 08.09.2021

2/10/22
Page 6 of 6

# EXHIBIT A

ALL THAT CERTAIN lot or piece of ground with the messuage or tenement thereon erected,

SITUATE on the Westerly side of Kenmore Road (formerly Prentice Street) at the distance of Three Hundred and Twenty feet Northwardly from the Northerly side of Lansdowne Avenue, in the Thirty-fourth ward of the City of Philadelphia containing in front or breadth on the said Kenmore Road Sixteen feet an extending of that width in length or depth Westwardly between parallel lines at right angles to the said Kenmore Road One Hundred and Four and Fourteen one-hundredths feet, including on the rear end thereof the soil of a certain passageway or driveway not exceeding sixteen feet in width extending Northwardly into Lebanon Avenue and Southwardly into Lansdowne Avenue.

TOGETHER with the free use, right, liberty and privilege of the aforesaid driveway as and for a passageway and driveway at all times hereafter, forever in common with the owners, tenants and occupiers of the other lots of ground bounding thereon and having the use thereof.

BEING No. 840 Kenmore Road.